UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN LUTHER,

    Plaintiff,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS; STATE OF MICHIGAN,

    Defendant.

Civil Action No.:
Honorable

---

JAMES B. RASOR  (P 43476)
ANDREW J. LAURILA  (P 78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax

---

## COMPLAINT & JURY DEMAND

NOW COMES PLAINTIFF, JOHN LUTHER, by and through his attorneys, Rasor Law Firm, PLLC, and for his Complaint against Defendants, Michigan Department of Corrections and State of Michigan, states as follows:

### GENERAL ALLEGATIONS

#### Parties

1.    At all relevant times, Plaintiff John Luther ("Plaintiff"), was a resident of the City of Comstock Park, County of Kent, State of Michigan.

2.    Defendant MICHIGAN DEPARTMENT OF CORRECTIONS (hereinafter "MDOC") is a governmental entity created pursuant to the laws of the State of Michigan, and Defendant State of Michigan is a state government.

3. Defendants MDOC and the State of Michigan are public employers.

4. Defendant MDOC and Defendant State of Michigan are both a "program or activity" receiving Federal assistance within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a)-(b).

5. At all material times, Plaintiff was an employee of Defendants.

6. This lawsuit arises out of events occurring within the City of Grand Rapids, County of Kent, and State of Michigan.

## Jurisdiction and Venue

7. This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a)-(b).

8. This Court has jurisdiction over the claims arising under federal law pursuant to 28 USC §§1331, 1343.

9. The amount in controversy exceeds $75,000, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

10. Venue is appropriate in this Court pursuant to 28 USC §1391(b), as this cause of action arises out of occurrences that took place within this District in the County of Kent and Defendant transacts and conducts business within this District.

## COMMON FACTUAL ALLEGATIONS

11. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one through 10 of the General Allegations, as if fully set forth herein, paragraph by paragraph, word for word.

12. Plaintiff began working for Defendant as a Probation Officer located at MDOC's Detroit Probation Department in 1990; this was after Plaintiff's employment with MDOC generally began in the 1980s, and Plaintiff transferred to MDOC's Kent County location in 1996.

13. For almost three decades, Plaintiff performed his job as a probation officer beyond satisfactorily.

14. However, on or around March 22, 2019, Plaintiff filed an internal discrimination harassment complaint against his then-supervisor, Gail Bird, alleging that she was harassing and discriminating against him based on his known learning disability.

15. What appeared to be in response to Plaintiff's complaint, he was transferred to a different supervisor, Christine Witters.

16. Despite being transferred, Plaintiff was subject to increased harassment and hostility from Witters, who it is believed is close friends with Bird.

17. As a result of the ongoing hostility, Plaintiff filed a second internal harassment/retaliation complaint against Witters on or around May 14, 2019, while concurrently taking a medical leave of absence based on the stress of the working environment.

18. While off on medical leave, Defendant, specifically but not limited to Witters, placed Plaintiff on an interim rating and performance review plan—akin to a disciplinary action given it opens the door for potential adverse actions such as suspension, stop order, and termination—based on alleged performance issues.

19. Plaintiff returned to work from his medical leave of absence on July 15, 2019.

20. Upon Plaintiff's return, he continued to experience hostility and increased scrutiny from Witters, his supervisor.

21. Along with this ongoing harassment and increased scrutiny, Plaintiff was placed on another interim rating for 90 days on November 22, 2019; again, akin to a disciplinary action.

22. This interim rating only led to further scrutiny and harassing treatment from Witters.

23. Defendant continued to extend Plaintiff's interim rating throughout the initial months of 2020.

24. On June 2, 2020, due to the ongoing mistreatment and what appeared to be selective enforcement, Plaintiff filed an EEOC charge of discrimination citing both disability discrimination and retaliation.

25. Based on the ongoing harassment and treatment leading to Defendant placing Plaintiff on stop order, Plaintiff took another medical leave of absence based on stress on or around June 9, 2020.

26. Then on June 30, 2020, Defendant's use of the interim-rating process escalated to the extent that Plaintiff was suspended and placed on stop order.

27. On or around September 19, 2020, Plaintiff was terminated under the guise of Plaintiff's performance.

28. Plaintiff's "performance" had neither decreased nor worsened than it had been during his 30 years of experience in the job.

29. Upon information and belief, Defendant's use of the interim rating and allegations that Plaintiff had poor performance arose from work that purportedly was not completed while Plaintiff was off on medical leave.

## COUNT I
## VIOLATION OF 29 U.S.C § 794, *et seq.*, SECTION 504 OF THE REHABILITATION ACT – DISABILITY DISCRIMINATION AS TO DEFENDANTS MDOC AND STATE OF MICHIGAN

30. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 29, as if fully set forth herein.

32. The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

33. The claims under the Rehabilitation Act are brought against Defendant MDOC as a department, agency, or instrumentality of Defendant State of Michigan.

34. Plaintiff is an "individual with a disability" within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(a)-(b) given he has a learning disability that affects various major life activities as enumerated in the Statute, including but not limited to thinking, learning and concentrating.

35. The operations of Defendant MDOC, including but not limited to its employment policies/procedures, are "programs or activities" within the meaning of the Rehabilitation Act.

36. Defendant MDOC receives "federal assistance" within the meaning of 29 U.S.C. § 794(a).

37. Plaintiff could perform his job, with or without a reasonable accommodation, as is evident from his long tenure with MDOC.

38. Defendant knew of Plaintiff's disability, specifically his supervisor, Christine Witters, and/or perceived Plaintiff to have a disability based on his two separate medical leaves and his known learning disability.

39. Relevant Federal Rules and Regulations provides that "No qualified handicapped person shall on the basis of handicap be subjected to discrimination under any program or activity receiving Federal financial assistance." 28 C.F.R. § 42.510(a)(1).

40. Defendant MDOC is required to "make all decisions concerning employment under any program or activity receiving Federal financial assistance in a manner which ensures that discrimination on the basis of handicap does not occur

and may not limit, segregate, or classify applicants or employees in any way that adversely affects their opportunities or status because of handicap." 28 C.F.R. § 42.510(a)(2).

41. Plaintiff was treated disparately and harshly based on his learning disability and/or his perceived disability relating to his two medical leave(s), even to the extent that he was forced to take multiple medical leaves based on the stress the workplace created.

42. Plaintiff's disability, Defendant's perception of a disability and Defendant's treatment of the same resulted in Defendant's constant selective enforcement and increased scrutiny pertaining to Plaintiff's work, culminating in his interim-rating(s) and ultimate termination.

43. Given the above-referenced discriminatory increased scrutiny and selective enforcement, Plaintiff's performance, which was not suffering, became an issue to the extent that Defendant instituted numerous erroneous performance-improvement plans and interim ratings, all of which initiated the termination process.

44. Defendant's discriminatory treatment of Plaintiff denied him Defendants' services, benefits, activities, programs, or privileges as the access provided to non-disabled individuals.

45. On information and belief, this denial and failure to provide comparable access to Defendants' services, benefits, activities, programs or privileges arose

7

from Defendant's discriminatory animus towards Plaintiff's disability and/or his perceived disability relating to his medical leave(s) and his learning disability.

46. Defendant's discriminatory selective enforcement and increased scrutiny ultimately led to Plaintiff's termination.

47. As a proximate result of Defendants' violation of Plaintiff's rights under the Rehabilitation Act, Plaintiff has suffered, and continues to suffer, from discrimination, unequal treatment, exclusion from Defendants' programs, financial loss, loss of employment and promotional opportunities, loss of dignity, frustration, humiliation, emotional pain and suffering, anxiety, trauma, embarrassment, unnecessary loss of rights and privileges, including unnecessary disciplinary measures, and injury to his health.

48. Defendants' failure to comply with the Rehabilitation Act has resulted in harm to Plaintiff, and Defendants are liable to Plaintiff for these harms suffered.

49. Pursuant to Section 504 of the Rehabilitation Act, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants including but not limited to compensatory damages in whatever amount he is found to be entitled, exemplary

damages commensurate with the wrong and Defendant's ability to pay, and an award of her fair and reasonable attorney fees, cost of litigation, and interest.

## COUNT II
## VIOLATION OF 29 U.S.C § 794, *et seq.*, SECTION 504 OF THE REHABILITATION ACT – RETALIATION – AS TO DEFENDANTS MDOC AND STATE OF MICHIGAN

50. Plaintiff reasserts and realleges each and every allegation contained in paragraphs Plaintiff reasserts and realleges each and every allegation contained in paragraphs 1-49 of this Complaint, as if fully set forth herein, paragraph by paragraph, word for word.

51. The Rehabilitation Act prohibits retaliation against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter. See 29 U.S.C. § 794(a) and 29 U.S.C. § 794(d) (adopting standards and claims applicable in ADA Title I claims).

52. Defendant owed Plaintiff a duty not to retaliate against him with respect to employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of him engaging in protected activities.

53. Plaintiff engaged in protected activity when he filed internal discriminatory harassment complaint(s), when he requested and was granted medical leave of absence(s), and when he filed a EEOC charge of discrimination.

54. Defendant had knowledge of Plaintiff's protected activities as set forth in the preceding paragraphs.

55. Had Plaintiff not engaged in protected activity, he would not have been subjected to adverse treatment from Defendant.

56. Subsequently to Plaintiff's protected activities, he was baselessly placed on a performance plan and interim rating, subject to increased scrutiny, had Defendant's policies selectively enforced against him, was suspended and placed on stop order, and ultimately terminated.

57. Defendant's actions in retaliating against Plaintiff based on his protected activity was conducted with malice or reckless indifference to Plaintiff's federally protected rights.

58. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

59. Defendant, by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory actions against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees and failing to permit Plaintiff to return to work.

60. Defendant and its agents, servants and/or employees' actions were intentional with reckless indifference to Plaintiff's rights and sensibilities.

61. As a direct and proximate result of Defendants' unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential

loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

62. Pursuant to the Rehabilitation Act, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff John Luther, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants including but not limited to compensatory damages in whatever amount he is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, and an award of his fair and reasonable attorney fees, cost of litigation, and interest.

### COUNT III
### VIOLATION OF 29 U.S.C § 794, *et seq.*, SECTION 504 OF THE REHABILITATION ACT – HOSTILE WORK ENVIRONMENT – AS TO DEFENDANTS MDOC AND STATE OF MICHIGAN

63. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 62, as if fully set forth herein.

64. As stated above, the Rehabilitation Act prohibits discrimination against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's disability.

65. At all material times, Plaintiff was an employee of Defendant employer MDOC, covered by and within the meaning the Rehabilitation Act.

66. As an entity covered by the Rehabilitation Act, MDOC owed Plaintiff a duty not to discriminate against him with respect to his employment, promotional opportunities, compensation or other conditions or privileges of employment on the basis of disability and/or perceived disability arising from his medical leave(s) of absence, including increased scrutiny, supervisor hostility, and selective enforcement of Defendant's policies.

67. Defendant MDOC, by its agents, representatives, and/or employees, was predisposed to discriminate on the basis of disability and/or perceived disability arising from his medical leave(s) of absence and acted in accordance with that predisposition.

68. While employed by Defendant MDOC, Plaintiff was constantly and repeatedly subjected to disability discrimination, hostility, and selective enforcement, by and through its agents, servants and/or employees (specifically but not limited to Plaintiff's supervisor(s) said acts being made unlawful by the Rehabilitation Act.

69. Defendant MDOC, by and through its agents, servants and/or employees intentionally violated the Rehabilitation Act by the following acts:

   a. Discriminating against Plaintiff with respect to employment, compensation, or a term, condition or privilege of employment, because of disability and medical leave(s) of absence(s) and/or the perception of the same;

    b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of disability and medical leave(s) of absence(s) and/or the perception of the same;

    c. Segregating, classifying or otherwise discriminating against Plaintiff on the basis of disability/medical leave(s) and/or the perception of the same with respect to a term, condition or privilege of employment, including a benefit plan or system;

    d. Creating a hostile work environment on the basis of Plaintiff's disability/medical leave(s)/perception of the same;

    e. Placing Plaintiff under unreasonable increased scrutiny and selectively enforcing MDOC policies against Plaintiff; and/or

    f. Failing to provide a work environment free from disability discrimination.

70. The disparate and less favorable treatment to which Plaintiff was subjected to came both from management and supervisory personnel and was not directed at employees who do not suffer disabilities and/or take medical leave.

71. Defendant MDOC subjected Plaintiff to disparate treatment in whole or in part because of his disability and/or medical leave(s) and/or perception of the same, and such treatment was sufficiently severe and pervasive such that Plaintiff was subjected to a hostile work environment on the basis of his disability and/or need for an accommodation.

72. Plaintiff's working environment began so toxic and hostile that he was forced to take two separate leave(s) of absences.

73. Despite twice filing internal harassment complaints, MDOC did not remedy the ongoing harassment but instead it only intensified.

74. Defendant MDOC has a policy or pattern of practice that encourages management or supervisory personnel to directly discriminate against disabled employees and/or employees that take medical leave and/or perceived, or that tolerates the disparate and less favorable treatment of the same by said management and supervisory personnel.

75. Defendant MDOC has a policy or pattern of practice that encourages management or supervisory personnel to look the other-way or actively encourage disparate and less favorable treatment of disabled and/or employees who have taken medical leave and/or perceived as such.

76. Defendant MDOC had no legitimate business reason for its actions, in violation of the Rehabilitation Act, which specifically prohibits discrimination against any person regarding employment and/or the terms of employment on the basis of disability.

77. Defendant MDOC and its agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

78. As a direct and proximate result of Defendants' unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

79. Pursuant to the Rehabilitation Act, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff John Luther, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants including but not limited to compensatory damages in whatever amount he is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, and an award of her fair and reasonable attorney fees, cost of litigation, and interest.

RESPECTFULLY SUBMITTED:

**THE RASOR LAW FIRM**

/s/ *Andrew J. Laurila*
James B. Rasor (P43476)
Andrew J. Laurila (P78880)
Attorneys for Plaintiffs
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

Dated: February 18, 2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN LUTHER,

    Plaintiff,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS; STATE OF MICHIGAN,

    Defendant.

Civil Action No.:
Honorable

---

JAMES B. RASOR  (P 43476)
ANDREW J. LAURILA  (P 78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax

---

## **JURY DEMAND**

**NOW COMES** Plaintiff, JOHN LUTHER, by and through his attorneys, RASOR LAW FIRM, PLLC, and hereby demands a trial by jury in the above-captioned cause of action.

RESPECTFULLY SUBMITTED:

THE RASOR LAW FIRM

/s/ *Andrew J. Laurila*
James B. Rasor (P43476)
Andrew J. Laurila (P78880)
Attorneys for Plaintiffs
201 E. Fourth Street
Royal Oak, Michigan 48067-3846
(248) 544-9300/(248) 543-9050 Fax
jbr@rasorlawfirm.com
ajl@rasorlawfirm.com

Dated: February 18, 2021